UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRACY A. PINA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 11cv5002-BHS-JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

NOTING DATE: February 17, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 14, 16, 19).

The ALJ did not explain why significant probative evidence was rejected and failed to evaluate properly the medical evidence. Therefore, this matter should be

reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## BACKGROUND

Plaintiff, TRACY A. PINA, was born in 1971 and was thirty-two years old on her alleged date of disability onset of August 10, 2004 (Tr. 121). She served in the military from 1999 until 2004 and also worked as a dental assistant (Tr. 29). She sustained some injuries during basic training and also fell while working (Tr. 29, 34). She testified that she became unable to work due to her back, right arm, left leg, and migraines (Tr. 36). She testified that she could not stand or sit for more than ten minutes without excruciating pain that required that she go lie down (Tr. 36-37). Plaintiff testified that she could sit for twenty or thirty minutes, but that she would be in pain (Tr. 39).

Plaintiff testified that she had a carpal tunnel release surgery as well as a cubital tunnel release surgery (Tr. 44). She also testified that she could not hold a pen or carry a half a gallon of milk with her right arm, due to lack of strength (Tr. 38, 43). Plaintiff testified that she had a "free floating nerve" in her elbow, which caused her fingers to twitch (Tr. 44). Plaintiff testified that she had migraines about four to five times a month, for about two to three days (Tr. 39, 41).

Regarding her activities of daily living, plaintiff testified that she drove every day (Tr. 52). She took her daughter to water polo and took a dog training class that was an hour away (Tr. 52, 55). About three years before her April 22, 2009 hearing, she was driving on the weekends to visit her children (Tr. 57-58). She was able to bathe her youngest daughter until approximately two years prior to her August, 2009 hearing, but

then her "back pain just got so bad, I couldn't bend over anymore in the tub" (Tr. 61). She testified that although a recent MRI indicated that she had a nerve root impingement, that she was not a surgery candidate due to her multilevel degenerative disc disease (Tr. 62).

PROCEDURAL HISTORY

Plaintiff filed an application for Social Security disability benefits in August, 2006 alleging disability onset of August 10, 2004 (Tr. 14, 121-23). Her application was denied initially and following reconsideration (Tr. 83-87, 89-90). Plaintiff's requested hearing was held before Administrative Law Judge Mattie Harvin-Woode ("the ALJ") on April 22, 2009 (Tr. 26-82).

On June 25, 2009, the ALJ issued a decision in which she found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 11-25). On October 28, 2010 the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). See 20 C.F.R. § 404.981.

In January, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (ECF Nos. 1, 3). On May 10, 2011, defendant filed the sealed administrative record in this matter ("Tr.") (see ECF No. 10). In her Opening Brief, among other issues, plaintiff challenges the ALJ's evaluation of: (1) the medical evidence; (2) the lay testimony; (3) plaintiff's credibility; and (4) plaintiff's residual functional capacity (see ECF No. 14, pp. 13-14).

REPORT AND RECOMMENDATION - 3

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

## DISCUSSION

1. <u>The ALJ erred in her evaluation of the medical evidence and failed to discuss significant probative evidence</u>.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>, supra, 81 F.3d at 830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." <u>Reddick</u>, supra, 157 F.3d at 725 (*citing* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

However, the ALJ "need not discuss *all* evidence presented." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id</u>. (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981)).

    a. <u>The ALJ did not evaluate properly all of plaintiff's severe impairments and failed to discuss significant probative evidence</u>.

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Smolen, supra, 80 F.3d at 1290 (citations omitted).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." Smolen, supra, 80 F.3d at 1290 (*citing* Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); see also Slayman v. Astrue, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen, supra, 482 U.S. at 146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); Bowen, supra, 482 U.S. at 146; see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (*citing* Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)).

The ALJ found that plaintiff had the severe impairments of fibromyalgia, degenerative disc disease, and left ankle impairment with surgery (Tr. 16). The ALJ failed to find a number of plaintiff's diagnosed impairments to be severe, including right arm neuropathic pain secondary to ulnar nerve entrapment, migraines, obesity, major depressive disorder, anxiety disorder and somatic disorder (see, e.g., Tr. 266, 315, 330, 372, 432, 441; see also Tr. 462, 463, 465 (new evidence)).

For example, the ALJ failed to find that plaintiff's right arm pain secondary to ulnar nerve entrapment was a severe impairment (Tr. 16). When discussing carpal syndrome, the ALJ noted that a nerve conduction study in 2006 showed no evidence of right ulnar neuropathy (Tr. 18), but failed to mention that on March 27, 2008, Dr. Paul E. Whittaker, M.D. ("Dr. Whittaker"), after physical examination, diagnosed plaintiff with right upper extremity pain and concluded that she failed the "Army retention standards" (Tr. 347-52). The ALJ also failed to mention that plaintiff was found to exhibit weakness in her upper extremity on March 26, 2008 and was assessed as having "right arm neuropathic pain secondary to ulnar nerve entrapment" (Tr. 372). Her prognosis was "poor" and she was assessed as likely to have "significant pain and disability" (Tr. 372). The Court concludes that the ALJ erred when evaluating the medical evidence regarding plaintiff's right arm pain by failing to explain why significant probative evidence was rejected.

The Court cannot find that the ALJ properly considered the combined effect of all of plaintiff's impairments on her ability to function, as legally required, when significant probative evidence relevant to particular impairments was not discussed. See Smolen, supra, 80 F.3d at 1290. Based on the relevant record, the Court concludes that the ALJ failed to discuss why significant probative evidence was rejected. See Vincent, supra, 739 F.2d at 1394-95. For example, the Court concludes that the ALJ erred when evaluating the medical evidence regarding plaintiff's right arm pain and likely failed to consider appropriately the limitations resulting from this pain when assessing plaintiff's residual functional capacity. For this reason, and the other reasons discussed in this Report and

Recommendation, the medical evidence and plaintiff's residual functional capacity should be assessed anew and this matter should be reversed and remanded to the Commissioner for further consideration.

Plaintiff has not demonstrated how all of the diagnosed impairments that the ALJ failed to find were severe had more than a minimal effect on her ability to conduct basic work activities (see Opening Brief, ECF No. 14, pp. 14-19). For example, although plaintiff complains about the fact that the ALJ failed to find her migraine impairment to be a severe impairment, the citations to the record provided by plaintiff do not demonstrate conclusively that the ALJ erred when finding that plaintiff's migraines were controlled with medication (see id., p. 16 (*citing* Tr. 441, 462-67)). However, because this matter should be remanded for proper consideration of all of the medical evidence, including all of the significant probative evidence, the Step Two determination regarding plaintiff's severe impairments should be considered anew following remand.

The medical evidence regarding plaintiff's right arm pain was not the only significant probative evidence that the ALJ failed to discuss. Although the ALJ indicated that a motor examination by Dr. Jos A. Cove, M.D. ("Dr. Cove") of plaintiff was normal, she failed to mention the observation by Dr. Cove that plaintiff had some hypeshesia in the foot and was "able to toe and heel walk, albeit only with support" (Tr. 344). Similarly, the ALJ mentioned the assessment by Dr. Shoshanna Press, M.D. ("Dr. Press"), but did not discuss the fact that Dr. Press opined that plaintiff's global assessment of functioning ("GAF") was 45-55 (Tr. 18, 266). The ALJ indicated that she was giving "greater" weight to the opinions from treating and examining physicians, than

to those of medical consultants (Tr. 22) and, therefore, should have discussed all of these opinions by treating and examining medical sources more thoroughly.

> b. <u>The significant probative evidence in plaintiff's mental residual functional capacity assessment by Dr. Michael Regets, Ph.D. ("Dr. Regets") and Dr. Bruce Eather Ph.D. ("Dr. Eather") should have been discussed explicitly in the ALJ's written decision</u>.

Although the ALJ indicated that Dr. Regets concluded that plaintiff was able to relate appropriately to supervisors and coworkers (Tr. 18), she failed to explain why she did not credit fully Dr. Regets' opinion that plaintiff "would do best not working around general public other than in superficially social roles" (Tr. 270). The ALJ also failed to mention Dr. Regets' opinion that plaintiff suffered moderate limitation in her ability to maintain attention and concentration for extended periods (Tr. 268). In addition, the ALJ failed to discuss that Dr. Regets opined that plaintiff was moderately impaired in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, as well as moderately impaired in her ability to interact appropriately with the general public (Tr. 269). The ALJ concluded that plaintiff's mental impairments did not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities without an explicit discussion of the noted opinions of Dr. Regets regarding plaintiff's moderate work-related limitations (see Tr. 18). For this reason, and based on the relevant record, the Court finds that the ALJ's review of this residual functional capacity assessment provides an additional reason to set

aside the ALJ's decision. See Vincent, supra, 739 F.2d at 1394-95; see also Bayliss, supra, 427 F.3d at 1214 n.1.

      c.  Ms. Kathleen Backous ("Ms. Backous")

The ALJ included the following discussion in her written decision:

> The physical residual functional capacity assessment performed by Kathleen Backous, M.D. in October 2006 is a foundation for the RFC ["residual functional capacity"]. For instance, this doctor concluded that the claimant was limited, as described in the preceding paragraph [RFC], in the areas of climbing, balancing, crawling, crouching, and stooping, as well as the need to avoid concentrated exposure to hazards and the limitation in the use of her right arm in overhead reaching.

(Tr. 20).

Defendant admits that the ALJ erroneously referred to medical consultant Ms. Backous as a doctor and erroneously asserted that she had a M.D. (see Response, ECF No. 216, pp. 10-11). In addition, defendant does not respond to plaintiff's argument that neither Ms. Backous, nor Dr. Robert Hoskins, M.D. ("Dr. Hoskins"), who affirmed the assessment by Ms. Backous, could have reviewed much of the evidence of record as such evidence did not enter the record until after the assessment by Ms. Backous (see Opening Brief, ECF No. 14, p. 17; see also Tr. 302). For these reasons, the Court finds that the physical residual functional capacity assessment by Ms. Backous, as affirmed by Dr. Hoskins, should be evaluated anew and should be discussed explicitly in light of other, more recent medical evidence regarding plaintiff's ability to function.

Because the ALJ indicated her reliance on this physical residual functional capacity assessment by Ms. Backous as "a foundation for the RFC," or residual functional capacity determination of plaintiff, the Court finds that this error further

buttresses the Court's conclusion, see supra, section 1.a., that the residual functional capacity assessment of plaintiff should be evaluated anew following remand of this matter.

2. Plaintiff's credibility should be assessed anew following remand of this matter.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, supra, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

First, the Court notes that a determination of plaintiff's credibility relies on the assessment of the medical evidence. See 20 C.F.R. § 404.1529(c). The Court already has determined that the ALJ failed to evaluate properly the medical evidence, see supra, section 1. In addition, as discussed below, the ALJ relied explicitly on her assessment of

the objective medical evidence when failing to credit fully plaintiff's testimony. Therefore, plaintiff's credibility must be assessed anew following remand of this matter.

The ALJ did not credit fully plaintiff's testimony in part due to a finding that plaintiff's allegations of disabling limitations were inconsistent with the objective medical evidence, citing normal muscle tone and strength findings (see Tr. 21 (*citing* Tr. 326-34). The ALJ further indicated that there was "no evidence of any intervening deterioration of the claimant's condition" (id.). The ALJ concluded that "this assessment is an accurate picture of the claimant's abilities during the time period in question" (id.).

However, in making this assessment, the ALJ failed to discuss the significant probative evidence of Dr. David P. Vetter, M.D.'s March 16, 2009 evaluation in which he noted his objective observation that plaintiff had very de-conditioned paraspinal and abdominal muscles (see Tr. 436). The Court already has noted other evidence not discussed by the ALJ of plaintiff's observed weakness in her upper extremity on March 26, 2008, see supra, section 1 (Tr. 372). Dr. Cove similarly assessed plaintiff as "deconditioned" on September 24, 2007 (see Tr. 344).

In addition, although relying on Dr. Whittaker's April 9, 2004 observation of normal muscle tone and strength, the ALJ failed to mention that Dr. Whittaker also observed 15/18 trigger points and assessed that plaintiff failed the retention standard for the military (Tr. 329-30). The Court also notes that this treatment report relied on by the ALJ reflected an assessment before the alleged onset date and many years before plaintiff's hearing (see Tr. 121).

The ALJ's failure to discuss the significant probative evidence is legal error and the ALJ's finding that there was "no evidence of any intervening deterioration of the claimant's condition" is not supported by substantial evidence in the record (see Tr. 21). See Vincent, supra, 739 F.2d at 1394-95. The ALJ's conclusion that "this assessment is an accurate picture of the claimant's abilities during the time period in question" likewise is not supported by substantial evidence in the record. See Bayliss, supra, 427 F.3d 1211, 1214 n.1.

The ALJ assessed plaintiff's functional abilities during the period in question based in part on an incomplete discussion of the medical evidence. The ALJ then relied on an incomplete review of the medical evidence as support for her decision to fail to credit fully plaintiff's testimony about her symptoms and functional limitations, thereby committing legal error. See Vincent, supra, 739 F.2d at 1394-95.

When discussing plaintiff's activities of daily living, the ALJ again provided an incomplete discussion. See Vincent, supra, 739 F.2d at 1394-95. The ALJ found that an inconsistency existed between plaintiff's activities of daily living and her other testimony (see Tr. 21). For example, the ALJ referenced a treatment note indicating that plaintiff obtained plenty of exercise going up and down the stairs of a split level house (see id.). However, the excerpt by the ALJ is incomplete, as the referenced section included the following:

> [Plaintiff] now states the pain is now back, worse with walking, improved with heat and rest. She also notes that this pain is different from her 'fibromyalgia pain,' which is achy in nature and is all over her body. Pt is now using walker to prevent falls when legs buckle. She uses cyclobenzaprine for muscle pain. States she gets lots of exercise walking

>   with her toddlers and doing housework during the day (going up and
>   down stairs in split level house.) She states she simply 'works through
>   the pain' which is typically 6-7/10 but requires rest when it reaches 9/10.
>   Pt is assisted by husband (when home) and her teenage children.

(Tr. 363).

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ erred in her review of plaintiff's credibility. Therefore, plaintiff's testimony should be assessed anew following remand of this matter.

3. <u>The lay testimony should be evaluated anew following remand</u>.

The Court already has determined that the ALJ's erred in her review of plaintiff's daily activities, <u>see</u> <u>supra</u>, section 2. The ALJ relied on a finding of inconsistency between plaintiff's activities of daily living and the lay testimony in order to fail to credit fully lay testimony favorable to plaintiff (<u>see</u> Tr. 22-23). For this reason, and based on the relevant record, the Court concludes that the lay testimony should be assessed anew following remand of this matter.

4. <u>This matter should be remanded for further consideration by the Commissioner</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

>   (1) the ALJ has failed to provide legally sufficient reasons for rejecting
>   such evidence, (2) there are no outstanding issues that must be resolved
>   before a determination of disability can be made, and (3) it is clear from

> the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, supra, 80 F.3d at 1292. There is a large volume of medical and other evidence, and there is much in the record that was not considered explicitly by the ALJ. In addition, the medical record is not conclusive that plaintiff is disabled.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick, supra, 157 F.3d at 722; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity. See Sample, supra, 694 F.2d at 642. In addition, remanding the matter will allow the Commissioner the opportunity not only to reconsider its decisions at steps two through five of the sequential disability evaluation, but also to consider fully the new evidence plaintiff submitted to the Appeals Council.

## CONCLUSION

The ALJ did not explain why significant probative evidence was rejected and failed to evaluate properly the medical evidence. Based on this reason, the reasons stated herein, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 17, 2012, as noted in the caption.

Dated this 30th day of January, 2012.

J. Richard Creatura
United States Magistrate Judge